IN THE MATTER OF THE APPLICATION OF THE NEW YORK BAY RAILROAD COMPANY FOR A SUMMARY DETERMINATION AS TO THE TAXATION OF CERTAIN LANDS IN THE CITY OF NEWARK.

Argued June 10, 1907—Decided November 11, 1907.

1. Under the act for the taxation of railroad and canal property (*Gen. Stat.*, p. 3325, *pl.* 214), as amended by chapter 122 of the laws of 1906 (*Pamph. L.*, p. 220), the main stem of a railroad does not extend beyond the roadbed, although such roadbed be less in width than one hundred feet.

2. Certain property of a branch railroad used for railroad purposes —*Held*, under the evidence, not to be a part of its main stem, assuming that the roadbed of the branch railroad, under the decision of the Court of Errors and Appeals in Jersey City *v.* State Board of Assessors (not yet reported), is "main stem" for the purposes of taxation.

In the matter of double taxation.

Before Justices HENDRICKSON, PITNEY and TRENCHARD.

For the applicant, *Vredenburgh, Wall & Carey.*

For the state, *Robert H. McCarter,* attorney-general.

For the city of Newark, *Herbert Boggs* and *Francis Child, Jr.*

The opinion of the court was delivered by

PITNEY, J. This case involves the question of the proper mode of taxing certain lands in the city of Newark, alleged to be used for railroad purposes in connection with what is known as the West Newark branch of the New York Bay railroad. It appears that what is known as the "main line" of this railroad extends from Waverly, on the main line of the Pennsylvania railroad, and runs in an easterly direction across Newark bay to a terminal at Greenville, on the Hudson river. The West Newark branch does not directly connect with this main line, but starts from the main line of the Pennsylvania railroad near South Broad street in Newark (a considerable distance from Waverly), and runs first north-westerly and then northeasterly a distance of about two miles to a freight depot and freight terminal on Eighteenth avenue in Newark. This branch is used for the purpose of distributing and collecting freight to and from various manufacturing establishments located along its line.

Two main tracks known as "thoroughfare tracks" extend throughout the length of this West Newark branch. Their roadbed comprises a strip of land twenty-six feet in width.

The lots of land now in question include those designated as lots Nos. 50 and 51 in block No. 2577, lot No. 50 in block No. 2597, and lot No. 57 in block No. 2691. All these lots lie entirely outside of and adjoining the twenty-six-foot strip that constitutes the roadbed of the principal tracks.

Besides these, lot No. 1 in block No. 2571 is in controversy. This lot is about one hundred feet in width, extending south-

westerly from Eighteenth avenue to Waverly avenue, and it includes the roadbed of the thoroughfare tracks if these tracks be found to extend further to the northeast than Waverly avenue.

The controversy arises from the fact that for the year 1906 the lots above mentioned were included by the state board of taxation in the property assessed by the board as "main stem," under the provisions of the act of 1888 for the taxation of railroad and canal property (*Gen. Stat., p.* 3325, *pl.* 214), as amended in 1906 (*Pamph. L.* 1906, *pp.* 121, 220), while for the same year they were assessed by the local authorities of the city of Newark as "second-class" railroad property, by virtue of the supplement of May 8th, 1906, to the act of 1888. *Pamph. L.* 1906, *p.* 571.

The application to the jurisdiction of this court for the determination of this controversy was made by the railroad company under section 28 of the act of 1888. *Gen. Stat., p.* 3332, *pl.* 239. We repeat the query suggested in the opinion delivered at the present term in the case of the Belvidere-Delaware Railroad Company et al., whether the procedure laid down in the section cited can be availed of for the purpose of determining whether any given property is main stem or second-class property.

But since no objection to the form of procedure was made upon the argument, since the railroad company would have been entitled to sue out writs of *certiorari* to raise the same question, and since all parties concerned are before the court in the present proceeding, we will pass upon the merits, treating the proceedings as amended (if necessary) by the substitution of writs of *certiorari* and proper returns thereto.

Counsel for the city of Newark contend that the entire property of the West Newark branch of the New York Bay Railroad Company (including even the twenty-six-foot strip occupied by the thoroughfare tracks) is second-class property and not main stem, under the rule adopted by this court in the two cases of *Jersey City* v. *Board of Assessors,* 44 *Vroom* 164, 170. But since the argument herein that rule

has been overthrown by the Court of Errors and Appeals in reversing one of those decisions, and a different rule established for determining whether the roadbed of a so-called branch railroad is to be regarded as main stem or as second-class property, that rule being dependent upon the question whether the branch railroad was laid under such legislative authority as to require it to be treated as a railroad by itself, having its own main stem.

This question, however, has no pertinency to the present case (in our view of the facts) except with regard to lot No. 1 in block No. 2571. All the other plots in question lie outside of the twenty-six-foot strip that includes the roadbed of the two main or thoroughfare tracks. The decision of the Court of Errors and Appeals in Jersey City v. State Board of Assessors (not yet reported) subjects to taxation by the state board only the main stem or roadbed of the branch railroad, and not the lands that lie without it.

The width of the lands now in question, added to the width of the adjacent twenty-six-foot strip, in no place exceeds one hundred feet. The several plots, however, do not make up a continuous strip of one hundred feet in width, the continuity being interruped by offsets at the intersection of streets and at places where curves exist in the line of the branch. It cannot be deemed, therefore, that the whole of these plots was acquired for the purpose of accommodating through tracks of the branch railroad. But even did this appear, it is to be observed that the rule laid down by the Court of Errors and Appeals in *United New Jersey Railroad, &c., Co.* v. *Jersey City,* 26 *Vroom* 129, 131, has no applicancy to the present controversy. There the sole question was whether the property in question was used for railroad purposes, not whether it was used for main stem or roadbed, rather than for other railroad purposes. In that case the Chancellor said: "We think that where an authorized right of way has been acquired, over which a railroad has been constructed and is in good faith operated, which right of way is not devoted to another purpose, it is used for railroad purposes within the meaning

of the statute considered, although it may not, for the time being, be wholly occupied by tracks or other railroad appliances. That part of it which awaits railroad occupation upon the demand of necessity is in use, like the curtilage to a dwelling-house or the sides of a country highway."

In the present case the city may well concede that all the land in question is used for railroad purposes. But the question whether it is main stem is quite a different question.

The act of 1888 (*Gen. Stat., p.* 3325, *pl.* 214) declared what was to be included in the term "main stem." By the recent supplement (*Pamph. L.* 1906, *p.* 220) it was enacted that main stem "shall hereafter be held to include the road-bed not exceeding one hundred feet in width, with its rails and sleepers, and all structures erected thereon and used in connection therewith, not including, however, any passenger or freight buildings erected thereon."

As pointed out in the opinion delivered by this court at this term in the Matter of the United New Jersey Railroad and Canal Co. et al., the "main stem" of a railroad does not extend beyond the roadbed, although such roadbed be less in width than one hundred feet. "Roadbed" signifies the bed or foundation upon which rests the superstructure of rails and sleepers. Giving due effect to the word "main" in the phrase "main stem," the roadbed that is to constitute main stem must be deemed the bed or foundation of the principal tracks of the railroad at the place in question. The width of one hundred feet, as used in the statute, is a measure of limitation, not of extension, and the fact that a railroad company at any place on its line owns land of the width of one hundred feet or more does not extend "main stem" to the width of one hundred feet unless the roadbed of its principal tracks at the place in question extends to that width.

We find from the evidence that the roadbed of the West Newark branch of the New York Bay railroad, where it crosses blocks Nos. 2691, 2597 and 2577, is not wider than the twenty-six-foot strip that is occupied by the two main or thoroughfare tracks, and that the lots in question (aside from

lot No. 1 in block No. 2571), being outside of the roadbed, are not within the main stem as defined in *Pamph. L.* 1906, *p.* 220.

With respect to the lots just referred to, therefore, the assessment imposed by the city of Newark is sustained, and the assessment imposed by the state board of assessors should be properly reduced. The proofs are not before us to enable us to make a proper reduction. The court will hear counsel further upon this question.

It remains to deal with lot No. 1 in block No. 2571. Here the city has assessed the entire strip one hundred feet wide, not conceding any portion of it to be main stem. From the evidence we find that a strip twenty-five feet in width along the northwesterly side of this strip is occupied by the roadbed of the two thoroughfare tracks, and is therefore to be deemed main stem, if any part of this branch railroad is "main stem," under the rule laid down by the Court of Errors and Appeals in Jersey City *v.* State Board of Assessors (not yet reported), and that under the same rule the rest of this lot is second-class property.

But the evidence in the case, having been presented upon the theory adopted by this court in the two cases of *Jersey City* v. *State Board of Assessors,* 44 *Vroom* 164, 170, is not of such a character as to enable us to determine whether any part of the roadbed of this branch railroad is main stem. With respect, therefore, to lot No. 1 in block No. 2571, no order will be made until counsel have been heard upon the question whether further proofs should be submitted.